UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UCHENNA BUHARI,

        Plaintiff,

v.

        Case No. 23-cv-86-pp

SCHOENECK CONTAINERS,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), SCREENING COMPLAINT AND ORDERING PLAINTIFF TO FILE AN AMENDED COMPLAINT**

On January 23, 2023, the plaintiff, who is proceeding without an attorney, filed a complaint against the defendant alleging discrimination and harassment. Dkt. No. 1. The plaintiff claims the harassment started after the plaintiff asked supervisors why people of color were treated differently in job assignments. Id. at 3. The plaintiff separately filed a motion to appoint counsel. Dkt. No. 3. Because the court needs more information to decide whether the plaintiff has stated a claim, the court will require the plaintiff to file an amended complaint and will deny without prejudice the plaintiff's motion to appoint counsel.

**I.    Plaintiff's Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

To allow the plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must determine

1

whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i). The plaintiff's request to proceed without prepaying the filing fee says the plaintiff is not employed; the plaintiff initially checked the "yes" box for question I.(1), "Are you employed?", but appears to have scribbled over that mark put an "X" in the box next to "no." Dkt. No. 2 at 1. In section II, "**Income**," the plaintiff provides the name and address of an employer—"Seek," on Regency Court in Brookfield—but the spaces for listing income or wages are blank. Id. at 2. The plaintiff lists no spouse or dependents, reports monthly rent expense in the amount of $819 and reports other household expenses of $546. Dkt. No. 2 at 2. The plaintiff lists additional monthly expenses of $86 for life insurance, $136 for car insurance, $60 for electric and $40 (weekly) for gas. Id. at 3. The plaintiff reports owning a 2010 Mitsubishi Galant, but does not know its present value. Id. The plaintiff has $300 in cash on hand or in a checking or savings account and does not own other property. Id. at 3-4. The plaintiff lists loss of employment, "unexpected expenses" and financial hardship as circumstances supporting the request to proceed without prepaying the filing fee. Id. at 4. Based on the information in the request, the court concludes that the plaintiff does not have the ability to pay the filing fee.

The plaintiff still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without

2

Case 2:23-cv-00086-PP    Filed 07/12/23    Page 2 of 13    Document 5

*prepayment* of fees,' but not without ever paying fees.") (emphasis in original). When a court grants a motion allowing a plaintiff to proceed without *pre*paying the filing fee, it means only that the plaintiff does not have to pay the full filing fee up front; the plaintiff still owes the filing fee.

## II. Screening

The court next must decide whether the plaintiff has stated claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting the alleged claims; a plaintiff needs only to give the defendant fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. The court must liberally construe the allegations of a complaint filed by a self-represented plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### A. Facts Alleged in the Complaint

The plaintiff is suing defendant Schoeneck containers "and the individuals they appointed as supervisors, Ermal, Emmay Dryden (HR), Amina and their supervisor," whose name the plaintiff can't recall. Dkt. No. 1 at 2. According to the complaint, the plaintiff observed people of color—including the

3

plaintiff—being treated differently and being assigned tasks such as "only cleaning and picking up bottles." Id. at 3. The plaintiff asked Amina about this concern, but Amina just walked away. Id. The plaintiff then asked Ermal, who responded that assignments were up to the supervisors. Id. The plaintiff followed up by asking "why is it that people that look like [her]" weren't assigned to being the "break person" who relieves others when they go on break or lunch. Id. The plaintiff alleges that Ermal clapped his hands and yelled at the plaintiff, "demanding like you would with an animal to do something as for [the plaintiff] he was demanding [the plaintiff] to pick up bottles off the floor." Id. at 4.

The plaintiff says this caused Ermal to go to his superior and tell his superior about the question the plaintiff had asked, which led to the plaintiff being called into an office by Ermal's superior, who said, "when you ask such questions like the one I ask will enjoy lawsuits and lawyers." Id. The complaint alleges that Amina and the head supervisor were outside of the company building looking for the plaintiff, and that Amina had given the plaintiff a task in another area of the building. Id. The plaintiff became thirsty and went outside to get money from the car. Id. at 5. Amina and her supervisor were standing outside and asked where the plaintiff had been. Id. The plaintiff replied, "you two saw me walk out of the building and you two see my car parked over there." Id. The plaintiff then asked whether Amina and her supervisor were looking for the plaintiff and they said yes; the plaintiff asked

4

what they wanted, and they responded "nothing, we just wanted to know where you were." Id.

The plaintiff goes on to say that there was a lot happening negatively. Id. The plaintiff went to see the human resources person, Emma Dryden, so that Dryden could address what was going on with the supervisors and hostile employees. Id. The plaintiff says, however, that Dryden sent the plaintiff an email saying that Dryden would address it when she got around to it. Id. The plaintiff says that a meeting with Dryden was set up and then it was canceled. Id. According to the plaintiff, nothing was done to protect the plaintiff "from the ill treatment of these individuals." Id. at 6. All of this was happening while the plaintiff's mother was ill with an illness that eventually claimed her life; the situation led the plaintiff to go to the doctor's office and get medication for "extreme anxiety" while "continu[ing] to deal with the mistreatment and harassment while working at such a company." Id. The plaintiff says that the defendant(s) didn't act this way toward other ethnic groups and that the plaintiff has never experienced so much racism in the workplace since coming to Wisconsin. Id. The plaintiff says, "[w]hen I am given the opportunity to tell the court in detail what happened I will do so," id. at 4, "[t]here was so much happening to me negatively that I will explain," id. at 5, and "I will be given an opportunity to tell more of what occurred," id. at 6.

The plaintiff seeks damages in the amount of $25,000 for mental anguish and harassment. Id. at 7. In addition, the plaintiff wants the court to tell the

5

defendants not to treat people as they treated the plaintiff (citing the yelling and clapping hands). Id.

B. Analysis

Federal courts are courts limited jurisdiction. A federal court can consider and decide cases that involve violations of *federal* laws or the *federal* Constitution. 28 U.S.C. §1331. Federal courts also can consider and decide lawsuits between citizens of different states, if the amount they are fighting over is more than $75,000. 28 U.S.C. §1332. Federal courts cannot consider and decide lawsuits that involve violations of state law, unless the plaintiff and the defendant live in two different states, or unless the state-law claims relate to a federal claim.

Title VII of the Civil Rights Act of 1964 says that "an employer may not discriminate based on 'race, color, religion, sex, or national origin.'" Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)). Title VII allows people who feel they have been discriminated against to sue the employer, not an individual supervisor. Williams v. Banning, 72 F.3d 552, 555 (7th Cir. 1995). Title 42 United States Code §1981 "guarantees equal rights to all citizens regardless of race and in the context of employment provides that all people have the 'same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.' 41 U.S.C. §1981(a)." Morris v. BNSF Railway Co., 969 F.3d 752 (7th Cir. 2020). "[B]oth statutes 'have the same liability standards.'" Id. (quoting Walker v. Abbott Labs., 340 F.3d 471, 474 (7th Cir.

2003)). See also, Yancick v. Hanna Steel Corp., 653 F.3d 532, 544 (7th Cir. 2011).

It sounds as if the plaintiff believes that the defendants discriminated based on race, either by retaliation or by creating or allowing a hostile work environment, both of which are prohibited by Title VII and §1981. Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty., 804 F.3d 826, 833 (7th Cir. 2015). The plaintiff says the defendants treated people differently because of race, but the plaintiff doesn't provide much information about what the defendants actually did. The plaintiff says that people of color were being assigned tasks like cleaning and picking up bottles but weren't being assigned to be break persons. This sounds a bit like a hostile work environment claim. A Title VII hostile work environment claim requires, among other things, that the harassment be so "severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment." Huri, 804 F.3d at 833–34. The plaintiff also says that when the plaintiff asked Ermal about this, Ermal responded by treating the plaintiff like an animal, and that Ermal's supervisor implied that lawsuits and lawyers would be involved. This sounds a bit like a retaliation claim. A retaliation claim requires allegations that the plaintiff engaged in a statutorily-protected expression, suffered an adverse action, and that there is a causal link between the protected expression and the adverse action. O'Donell v. Caine Weiner Co., LLC, 935 F.3d 549, 553 (7th Cir. 2019).

But the court cannot be sure that the plaintiff is making either of these types of claims. The plaintiff says, repeatedly, that if given the chance the plaintiff will explain what happened. The complaint is where the plaintiff gets the opportunity to explain what happened, but the plaintiff has not done so. The plaintiff has not explained what job the plaintiff was hired to do and what the plaintiff's job duties are. The plaintiff has not explained how picking up bottles and cleaning instead of being a break person constitutes discrimination. Other than Ermal's rudeness, the plaintiff has not described the behavior that caused the plaintiff extreme anxiety. The plaintiff has not described the "who, what, when, where and how" of what the defendants did *to the plaintiff*. It is not enough to notice allegedly discriminatory actions by an employer; a plaintiff must explain what the employer did *to that plaintiff* and how those actions damaged the plaintiff.

There also is a requirement that a person must fulfill before bringing a Title VII claim in federal court. Before a plaintiff can bring a Title VII lawsuit in a federal court, the plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission; if the EEOC declines to pursue the plaintiff's claim of discrimination, it will issue the plaintiff a right-to-sue letter. Chaidez v. Ford Motor Co., 937 F.3d 998, 1004 (7th Cir. 2019) (citation omitted); Arrigo v. Link, 836 F.3d 787, 793 (7th Cir. 2016) (citation omitted). A plaintiff must have that right-to-sue letter before the plaintiff may file a Title VII lawsuit in federal court.

The court will require the plaintiff to file an amended complaint. The court will send the plaintiff a blank amended complaint form. The plaintiff must write the case number for this case—23-cv-86—on the first page of the amended complaint. The plaintiff must explain what actions each defendant took against, must explain why the plaintiff believes that the defendant took those actions because of the plaintiff's race and must explain how that defendant's actions harmed the plaintiff. The plaintiff must provide the dates on which the event(s) occurred and indicate whether the plaintiff filed a complaint with the EEOC or Wisconsin Equal Rights Division). If the plaintiff has a right-to-sue letter, the plaintiff must attach it to the amended complaint.

### III. Plaintiff's Motion to Appoint Counsel (Dkt. No. 3)

The plaintiff also filed a motion to appoint counsel, explaining that the plaintiff is not financially able to hire a lawyer and that the plaintiff is at a disadvantage because the defendant has legal representation and over a hundred employees with revenue of $70 million. Dkt. No. 3.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

9

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To satisfy the first prong, the plaintiff must contact at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

In particular, the lawyers' responses may have bearing on the court's decision to exercise its discretion because they may shed light on whether the plaintiff's attempts to hire counsel were reasonable. Pickett, 930 F.3d at 871. In deciding whether to recruit counsel, the court should consider the reasons the lawyer declined representation, including whether the plaintiff was unwilling (as opposed to unable) to pay a retainer; whether the lawyer lacked time or capacity to take on new clients; or whether the subject matter of the

10

case requires a lawyer who specializes in a specific area of law. Id. The court also should consider how well the plaintiff articulated the plaintiff's case to the prospective lawyer. Id. Where a plaintiff "conveyed [the plaintiff's] situation well and counsel deemed the claim feeble, then it would be inappropriate for a court to intervene" and recruit counsel. Id. But, where a plaintiff is inarticulate, then a court "may have a useful role to play in recruiting counsel." Id.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files the plaintiff's motion in the early stages of the case, the court may determine that it is "impossible to tell

11

whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not satisfied the first prong. There is no indication that the plaintiff has made a reasonable effort to find a lawyer. The plaintiff needs to try to contact at least three lawyers and to provide the court with any letters or other documents from lawyers who refuse to take the plaintiff's case.

Further, even if the plaintiff had tried to find a lawyer before filing this lawsuit, the court would not appoint a lawyer at this stage. The plaintiff knows what happened. The plaintiff writes clearly and legibly. The court understands that the plaintiff believes that the plaintiff's employer has mistreated the plaintiff based on the plaintiff's race. The plaintiff simply needs to provide the court with more details. At this early stage, the plaintiff can do that without the assistance of a lawyer.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff must file an amended complaint that complies with the instructions in this order. The plaintiff must file the amended complaint in time for the court to *receive* it by the end of the day on **August 4, 2023**. If the court does not receive an amended complaint (or a request for more time to file one) by the end of the day on August 4, 2023, the court may dismiss the case without further notice or hearing.

12

Case 2:23-cv-00086-PP   Filed 07/12/23   Page 12 of 13   Document 5

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 3.

Dated in Milwaukee, Wisconsin this 12th day of July, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**